**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000609**
**29-JUN-2020**
**08:02 AM**

NO. CAAP-16-0000609


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


YOUNG ACOPAN, Plaintiff/Counterclaim Defendant-Appellee,
v.
ELEGANT CONCEPTS, LLC dba PACIFIC CRAFTWORKS,
Defendant/Counterclaimant-Appellant,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE
PARTNERSHIPS 1-10; OR OTHER ENTITIES 1-10,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(Case No. 1CC131000247)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge and Hiraoka, J.,
with Leonard, J., dissenting)

Defendant/Counterclaimant-Appellant Elegant Concepts, LLC, doing business as Pacific Craftworks (**Pacific**), appeals from the "Final Judgment" (**Judgment**) entered by the Circuit Court of the First Circuit[1] on February 22, 2016. When an appellate court perceives a jurisdictional defect in an appeal the court must, sua sponte, dismiss the appeal. Ciesla v. Reddish, 78 Hawai'i 18, 20, 889 P.2d 702, 704 (1995). We lack jurisdiction over Pacific's appeal from the Judgment because: **(1)** Pacific's notice of appeal (filed on September 2, 2016) was not filed within thirty days after entry of the March 14, 2016 order denying Pacific's "Ex Parte Motion to Amend and Supplement Findings of Fact and Conclusions of Law and/or Motion for New Trial or to Alter or Amend Judgment" (**Ex Parte Motion**); and **(2)** Pacific's

---

[1] The Honorable Jeannette H. Castagnetti presided.

"Motion for Order to Amend and Supplement Findings of Fact and Conclusions of Law and/or Motion for New Trial or to Alter or Amend Judgment" (filed on March 15, 2016) (**Hearing Motion**) did not toll the time for Pacific to file a notice of appeal from the Judgment because the Hearing Motion was not filed within the time required by Hawaiʻi Rules of Civil Procedure (**HRCP**) Rules 52 and 59. Pacific's notice of appeal was timely only as to the circuit court's August 15, 2016 order denying the Hearing Motion; however, the points of error[2] in Pacific's amended opening brief do not address that order, and Pacific presents no discernible argument concerning the circuit court's denial of the Hearing Motion.

Plaintiff/Counterclaim Defendant-Appellee Young Acopan (**Acopan**) filed a complaint against Pacific. The complaint alleged claims for unjust enrichment and deceptive trade practices. Pacific answered the complaint and asserted a counterclaim for breach of contract. The circuit court conducted a jury-waived trial and entered findings of fact, conclusions of law, and an order. Acopan moved for clarification of the findings and conclusions. An order granting Acopan's motion for clarification was entered. The Judgment was entered on February 22, 2016. It stated, in relevant part:

> 1. Judgment is entered as to Count I (Unjust Enrichment) in favor of Plaintiff Young Acopan ("Acopan") as against Defendant Elegant Concepts, LLC dba Pacific Craftworks ("Pacific Craftworks") in the amount of $11,007.50.
>
> 2. Judgment is entered as to Count II (Deceptive Trade Practices) in favor of Defendant Pacific Craftworks as against Plaintiff Acopan.
>
> 3. Judgment is entered as to the counterclaim filed by Defendant Pacific Craftworks in favor of Defendant Pacific Craftworks as against Plaintiff Acopan in that Defendant Pacific Craftworks may retain $28,192.50 of the deposit of $39,200.00 paid by Plaintiff Acopan. This portion of the judgment shall not be construed to entitled [sic] Defendant Pacific Craftworks to any additional amount, but should be construed to allow Defendant Pacific Craftworks to retain the amount of $28,192.50 of the amount that they have already received.

_____

[2] We construe the section of the amended opening brief titled "Issues Presented for Review" as the statement of points of error, even though it does not fully comply with Rule 28(b)(4) of the Hawaiʻi Rules of Appellate Procedure (**HRAP**).

When the Judgment was entered on February 22, 2016, Rule 4 of the Hawai'i Rules of Appellate Procedure (eff. July 1, 2015) (**HRAP**) provided, in relevant part:

> **APPEALS - WHEN TAKEN.**
>
> **(a)   Appeals in civil cases.**
>
> (1)   TIME AND PLACE OF FILING.  When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order.
>
> .   .   .   .
>
> (3)   TIME TO APPEAL AFFECTED BY POST-JUDGMENT MOTIONS.  If any party files a timely motion . . . to amend findings or make additional findings, for a new trial, to reconsider, alter or amend the judgment or order, or for attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.

Thus, a notice of appeal from the Judgment was due by Wednesday, March 23, 2016, unless a timely motion "to amend findings or make additional findings, for a new trial, [or] to reconsider, alter or amend the judgment" was filed.

On February 26, 2016 (four days after entry of the Judgment), Pacific's Ex Parte Motion was stamped "received" by the circuit court.[3]  The Ex Parte Motion sought relief pursuant to HRCP Rules 52(b), 59(a), and 59(e), and included a proposed form of order.  HRCP Rule 52 provides, in relevant part:

> **(b)   Amendment.**  Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend

---

[3]      Pacific's Ex Parte Motion should have been filed as a non-hearing noticed motion under Rule 7.2(b) of the Rules of the Circuit Courts of the State of Hawai'i (eff. July 1, 2014) (**RCCH**), which provides:

> **(b)   Designation as hearing or non-hearing motion.** All written motions, other than motions entitled to be heard ex parte or those listed in Exhibit B attached to these rules, shall be designated as hearing motions and calendared for oral hearing[.]

Exhibit B to the RCCH (eff. Jan. 1, 2012) lists "Alter or Amend Order or Judgment" as a non-hearing motion.

the judgment accordingly.  The motion may be made with a
motion for a new trial pursuant to Rule 59.

(Underscoring added.)  HRCP Rule 59 provides, in relevant part:

> **NEW TRIALS; AMENDMENT OF JUDGMENTS.**
>
> . . . .
>
> > **(b) Time for motion.**  A motion for a new trial shall
> > be filed <u>no later than 10 days after entry of the judgment</u>.
>
> . . . .
>
> > **(e) Motion to alter or amend judgment.**  Any motion to
> > alter or amend a judgment shall be filed <u>no later than 10
> > days after entry of the judgment</u>.

(Underscoring added.)  Because the Judgment was entered on
February 22, 2016, motions under HRCP Rules 52 or 59 were due by
Thursday, March 3, 2016.  The Hawaiʻi Supreme Court has held that
submission of a document to a circuit court clerk and the clerk's
acceptance and date stamping of it as "received" constitutes a
filing sufficient to satisfy jurisdictional requirements.  <u>See</u>
<u>Doe v. Doe</u>, 98 Hawaiʻi 144, 151, 44 P.3d 1085, 1092 (2002)
(holding that the family court had jurisdiction over a motion for
new trial and reconsideration based on the date that the clerk
accepted and date stamped the document as "received").  In this
case Pacific's timely submission of the <u>Ex Parte</u> Motion to the
circuit court on February 26, 2016, extended the time for it to
file a notice of appeal "until 30 days after entry of an order
disposing of the motion."  HRAP Rule 4(a)(3).

Under the language of the rule in effect at the time,
if the circuit court failed to dispose of the motion within 90
days after the motion was filed, the motion would be deemed
denied and the 30-day deadline for filing the notice of appeal
would be triggered when a written order denying the motion was
filed.  <u>Deutsche Bank Nat'l Tr. Co. v. Amasol</u>, 135 Hawaiʻi 357,
358-59, 351 P.3d 584, 585-86 (2015) (citing <u>Ass'n of Condo.</u>
<u>Homeowners of Tropics at Waikele v. Sakuma</u>, 131 Hawaiʻi 254, 256,
318 P.3d 94, 96 (2013) (holding that when timely post-judgment
tolling motion is deemed denied, 30-day deadline for filing
notice of appeal is not triggered until entry of a judgment or
appealable order)).

Rule 7.2 of the Rules of the Circuit Courts of the State of Hawai'i (eff. July 1, 2014) (**RCCH**) provides, in relevant part:

> **(f)    Ex parte motions**.  A motion entitled to be heard ex parte shall
>
> (1)    cite the statute, rule, or other authority authorizing the court to entertain the motion ex parte;
>
> (2)    be supported by an affidavit or declaration stating the reason(s) for filing the motion ex parte, the efforts made to notify parties, and, if the motion is to shorten time or advance a hearing pursuant to subsection (g)(5) of this rule, the efforts made to obtain a stipulation or response from the other parties in the case or the reason(s) why no attempt was made;
>
> (3)    be accompanied by a proposed order; and
>
> (4)    be served on the date that the motion was presented to the court.

Pacific's Ex Parte Motion did not comply with RCCH Rule 7.2(f) because it did not cite any statute, rule, or other authority allowing the circuit court to entertain the motion ex parte,[4] and because it was not supported by an affidavit or declaration stating a reason for filing the motion ex parte.  Because the motion was lodged ex parte the circuit court followed the RCCH Rule 7.2 (eff. Jan. 1, 2012) procedure for processing ex parte motions:

> **(g)    Presentation of motions; copies for judge**.
> Unless otherwise provided by Rule 6 of the Hawai'i Court Records Rules ["Docketing documents from self-represented parties."], the following rules shall apply:
>
> . . . .
>
> (3)    EX PARTE MOTIONS.
>
> (A)    Cases Assigned to a Judge.  An ex parte motion accompanied by a proposed order shall be dated and stamped "lodged" or "received" by the Legal Documents Branch/Section clerk, listed on the docket, and transmitted to the assigned judge.  Upon the judge's action on the motion, it shall be transmitted to the Legal Documents Branch/Section for filing[.]

_____

[4]    See, e.g., HRAP Rule 4(a)(4)(A) (allowing ex parte motion to extend time to file notice of appeal if filed "before the expiration of the prescribed time[.]"); HRCP Rule 6(d) (allowing ex parte application to shorten time for hearing or to advance hearing date); RCCH Exhibit B (allowing ex parte motion for extension of time to file pretrial statement); RCCH Rule 7.2(g)(1)(A)(i)(b) (allowing ex parte motions for service by publication, examination of judgment debtor, and issuance of garnishee summons).

On March 14, 2016, Pacific's Ex Parte Motion, stamped "DENIED 5th Division[,]" with an attached order signed by the circuit court and containing handwritten changes, was filed.  Accordingly, Pacific's notice of appeal from the Judgment became due 30 days later, on Wednesday, April 13, 2016.  HRAP Rule 4(a)(3).

The dissent takes the view that what was entered by the circuit court on March 14, 2016, was not "an order disposing of the motion" as those words are used in HRAP Rule 4(a)(3), reasoning that "the Circuit Court's March 14, 2016 order denied the *ex parte manner* in which Pacific initially presented its motion," but not its substance.  Dissent at 15 (italics in dissent).  Respectfully, HRAP Rule 4(a)(3) does not restrict its application to a "substantive" order, or an order disposing of the motion "on its merits."  Under the plain language of the rule, an order denying a motion on procedural grounds "disposes" of that motion, just as the failure to "dispose of any motion by order entered upon the record within 90 days after the date the motion was filed" would constitute a disposition under the version of the rule then in effect.  Treating the Hearing Motion in the manner suggested by the dissent — as "an amendment" to the Ex Parte Motion — could result in procedural confusion; the Hearing Motion was not heard until June 1, 2016, but if it were treated as an amendment to the Ex Parte Motion, it would have been deemed denied on May 26, 2016 (90 days after the Ex Parte Motion was submitted and received).  No hearing would have been necessary, because the circuit court at that point could only have entered an order denying the motion.  Amasol, 135 Hawai'i at 358-59, 351 P.3d at 585-86.

At any rate, the circuit court's handwritten changes to the proposed order attached to Pacific's Ex Parte Motion included re-titling the proposed order to read: "Order Denying Ex Parte Motion to Amend and Supplement Findings of Fact and Conclusions of Law."  The circuit court also added the following handwritten provisions (shown in bold italics) to the proposed order:

> Defendant Pacific Craftworks *Motion shall be set as a hearing* shall be awarded reasonable attorney's fees and costs of suit. *motion and presented to the court for a*

6

> *hearing date in accordance with Circuit Court Rule*
> *7.2(g).* [5]

The circuit court rule cited by the circuit court, RCCH Rule 7.2 (eff. July 1, 2014) provided, in relevant part:

> **(b) Designation as hearing or non-hearing motion.** All written motions, other than motions entitled to be heard ex parte or those listed in Exhibit B attached to these rules [listing non-hearing motions], shall be designated as hearing motions and calendared for oral hearing; provided that discovery motions brought pursuant to Rules 26 through 37 of the Hawaiʻi Rules of Civil Procedure shall be governed by subsection (e) of this rule.
>
> . . . .
>
> **(g) Presentation of motions; copies for judge.** Unless otherwise provided by Rule 6 of the Hawaiʻi Court Records Rules ["Docketing documents from self-represented parties."], the following rules shall apply:
>
> (1)   HEARING MOTIONS.
>
> (A)   Cases Assigned to a Judge.
>
> (i)   In the First Circuit, . . . the assigned judge shall designate the date and time of a hearing motion[.] Upon presentation of the hearing motion . . . to the assigned judge, the motion . . . shall be date-stamped, indicating date of receipt. Upon designation of the hearing date and time, the motion . . . shall be transmitted to the Legal Documents Branch/Section for filing.

On March 15, 2016, (the day after the denied Ex Parte Motion was filed by the circuit court) Pacific filed the Hearing Motion. The Hearing Motion was a new motion, filed after the circuit court denied the Ex Parte Motion.  The filing of the Hearing Motion did not toll the time for Pacific to file a notice of appeal because the Hearing Motion was not filed within 10 days after entry of the Judgment, as required by HRCP Rules 52 and 59.

The Hearing Motion was heard on June 1, 2016.  An order denying the Hearing Motion was entered on August 15, 2016. Pacific's notice of appeal was filed on September 2, 2016, more than 30 days after entry of the March 14, 2016 order denying Pacific's Ex Parte Motion.  "An appellant's failure to file a timely notice of appeal is a jurisdictional defect that can

---

[5]      It appears that the circuit court may have intended to strike the phrase "shall be awarded reasonable attorney's fees and costs of suit" and the period that followed, but the filed document was worded as stated in the block quote.

neither be waived by the parties nor disregarded by the court in the exercise of judicial discretion." Enos v. Pac. Transfer & Warehouse, Inc., 80 Hawai'i 345, 349, 910 P.2d 116, 120 (1996) (citation omitted). We lack appellate jurisdiction to review the Judgment.

Pacific's notice of appeal was timely as to the August 15, 2016 order denying Pacific's Hearing Motion, but the points of error in Pacific's amended opening brief do not address that order, and Pacific presents no discernible argument concerning the denial of the Hearing Motion. Accordingly, the "Order Denying Defendant Elegant Concepts, LLC dba Pacific Craftworks Ex Parte [sic] Motion to Amend and Supplement Findings of Fact and Conclusions of Law and/or Motion for New Trial or to Alter or Amend Judgment, Filed on March 15, 2016" entered by the circuit court on August 15, 2016, is affirmed.

DATED: Honolulu, Hawai'i, June 29, 2020.

On the briefs:

Keith M. Kiuchi,
for Plaintiff/Counterclaim
Defendant-Appellee.

Joseph N. A. Ryan, Jr.,
for Defendant/Counterclaimant-
Appellant.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

DISSENTING OPINION BY LEONARD, J.

Respectfully, I dissent. The majority's disposition is based on its conclusion that this court lacks jurisdiction over Defendant/Counterclaimant-Appellant Elegant Concepts, LLC dba Pacific Craftworks's (**Pacific's**) appeal from the February 22, 2016 Final Judgment (**Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**)[1] in favor of Plaintiff/Counterclaim Defendant-Appellee Young Acopan (**Acopan**). For the reasons set forth below, I disagree with this conclusion. Therefore, this dissent necessarily addresses Pacific's challenges to the substance of the Circuit Court's rulings.

As noted above, Pacific appeals from the Judgment. Pacific also challenges the Circuit Court's: (1) June 23, 2015 Findings of Fact, Conclusions of Law and Order (**FOFs/COLs and Order**); (2) February 17, 2016 Order Granting [Acopan]'s Motion for Clarification on Court's [FOFs/COLs and Order] and/or for Reconsideration of Court's Order Granting in Part and Denying in Part [Pacific]'s Motion for Judgment on Partial Findings Filed on June 23, 2015 (**Order Granting Reconsideration**); and (3) August 15, 2016 Order Denying [Pacific's] Ex Parte Motion to Amend and Supplement Findings of Fact and Conclusions of Law and/or Motion for New Trial or to Alter or Amend Judgment (**Post-Hearing Order Denying Amendment**).

---

[1] The Honorable Jeannette H. Castagnetti presided.

Following a bench trial on Acopan's complaint, which included claims against Pacific for unjust enrichment and deceptive trade practices arising out of a cancelled order for custom woodwork, the Circuit Court ruled in favor of Pacific on both claims and awarded Pacific $28,192.50 on its counterclaim, but ordered Pacific to refund $11,007.50 of a deposit paid by Acopan. Upon Acopan's post-trial motion for reconsideration, the Circuit Court reinstated the unjust enrichment claim. On appeal, Pacific requests that this court reverse the award of unjust enrichment and remand with an instruction that judgment be entered in favor of Pacific and against Acopan on all claims.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, I would affirm in part the Circuit Court's FOFs/COLs and Order, Order Granting Reconsideration, and Judgment, and I would vacate in part.

I.   BACKGROUND

On January 29, 2013, Acopan filed a two-count complaint against Pacific (**Complaint**), alleging causes of action for (1) unjust enrichment and (2) deceptive trade practices in violation of Hawaii Revised Statutes (**HRS**) § 481A-3 (2008). In short, Acopan alleged that Pacific had submitted a proposal to manufacture custom woodwork, which Acopan signed; Acopan then paid Pacific a $39,200 deposit. Acopan further alleged that Pacific led her to believe that countertops were included in the

2

proposal, but she subsequently learned they were not. Acopan then cancelled her order and unsuccessfully sought the return of her deposit.

In response to the Complaint, on February 27, 2013, Pacific filed an Answer and Counterclaim, asserting one count for breach of contract against Acopan, based on her repudiation.

The Circuit Court held a bench trial from November 17 to 20, 2014. The record includes only excerpts from the trial. After trial, the Circuit Court entered FOFs and COLs, finding and concluding, in relevant part:[2]

### FINDINGS OF FACT

. . . .

7. Acopan decided that she wanted to buy woodwork and countertops from [Andy] Pham's companies [Stone Concepts and Pacific Craftworks] and sometime before October 27, 2012, Pham went to Acopan's house to take measurements for the woodwork Acopan wanted to order. After Pham took measurements, he placed an order in Vietnam for muong wood to start a 21 day kiln drying process.

8. As to countertops, Pham informed the office manager for Stone Concepts, Sarika Notani [(**Notani**)], that Acopan also wanted to buy countertops.

. . . .

11. Notani gave Acopan a written offer on Stone Concepts letterhead for the fabrication and installation of the selected granite countertops for $11,500. The offer required Acopan's signature and a 50% deposit with acceptance of the proposal plus any material cost. The proposal also stated that the deposit would be nonrefundable upon acceptance. *Exh. A-4.* Acopan left without signing the proposal and without making a down payment.

. . . .

13. On October 27, 2012, Pham went to Acopan's restaurant, Pancakes of Hawaii on Kapiolani Blvd., and presented Acopan with a document dated October 26, 2012, concerning Acopan's purchase of woodwork. Pham asked for a deposit for Acopan's woodwork order because without a deposit, Pham would not put the order into production.

---

[2] Pacific does not challenge any of the Circuit Court's factual findings.

14. There are two versions of this document in evidence: Exhibit 1 is the version that Pham kept and Exhibit 24 is a copy of the version that Pham gave to Acopan that she kept. The face of the document states it is an invoice. Acopan initialed both documents. The primary difference between the two documents is that Exhibit 1 (Pham's version) has the words "tax included" written on it and Exhibit 24 (Acopan's copy of her version) does not.

. . . .

18. The document also had a payment schedule that required a "first payment" of $39,200 and a final payment of $13,000 upon inspection and pickup. Both parties in this case have referred to the first payment as a deposit.

19. Acopan paid the $39,200 by way of a check made payable to Pham and cashed by Acopan who gave Pham cash and a $100 gift certificate to her restaurant after Pham endorsed the check.

20. The deposit was important because Pham would not begin production of the woodwork without the deposit.

21. Unlike the Stone Concepts proposal of October 24, 2012 that disclosed the deposit for the granite countertops was non-refundable the document Pham presented to Acopan on October 27, 2012 for the woodwork did not contain any such term. The document also did not include eighteen doors that Acopan had previously told Pham that she wanted to order.

. . . .

24. Thereafter, several sketches and CADs were made for Acopan's order which Acopan initialed. *See Exhs. 4-8 (sketches) and Exhs. 10-18 (drawings).*

25. Acopan claimed at trial that because the sketches contained the words "countertops" that she believed countertops were included in her order. The court finds Acopan's testimony in this regard not credible. . . . . Therefore, countertops were not included as part of her order with Pacific Craftworks.

26. Also after October 27, 2012 but before November 6, 2012, Acopan requested an itemized price list from Pacific Craftworks. John Truong provided the itemized list which gave the price of the woodwork for each individual unit including the kitchen, 4 closet systems, 3 bathrooms, a powder room, a laundry room, and the bookshelf.

27. The eighteen full sized doors, omitted from the October 27, 2012 document, were included in the itemized price list. There is no dispute or disagreement that Acopan's woodwork order included eighteen doors.

28. The itemization also included additional terms that were not previously noted on the original document Pham presented to Acopan on October 27, 2012. *Exh. 25.* Specifically, Truong's itemized price list included the term that "Cancellation after work/factory orders have been

submitted will result in forfeiture of the entire deposit." *Exh. 25* page 2, ¶ 4.

29. Precisely when Acopan received the itemization from Truong is the source of much controversy between the parties. Acopan says she received it shortly before November 16 when she decided to cancel her order. Pacific Craftworks argues it was provided to Acopan before November 8, 2012.

30. Truong testified that Acopan asked for an itemized price breakdown one to two days after Truong received the file. Since two days after October 27 fell on a Monday, the court finds that Truong received the file on or about Tuesday, October 30 and that Acopan asked for her itemized list on or about November 1 or 2.

31. Truong next testified that he gave Acopan the itemized list one to two days later, but could not remember the exact date. Based on Truong's estimates, the court finds that Truong gave Acopan the itemized list sometime between November 2 or 3, 2012 and November 6.

. . . .

37. . . . .[T]he court believes that after Acopan received the itemized price breakdown, Acopan continued to approve drawings for her order and went back to Pacific Craftworks on November 16 to order the additional door. After she made her first payment and after November 16, Acopan then began to have buyer's remorse and she tried to find a cheaper price for the woodwork elsewhere. Sometime thereafter, on or after November 23, 2012, Acopan tried to cancel her order, but she was told it was too late because the order was already in production.

38. On December 19, 2012, Acopan, through her counsel, demanded the return of her $39,200 deposit.

39. Pacific Craftworks did not return Acopan's deposit.

. . . .

41. Acopan's order was not delivered in Hawaii by Christmas. Instead, a portion of Acopan's order was shipped from Vietnam to Hawaii on January 14, 2013 as a shipping invoice shows a large shipment to Pacific Craftworks on that date. *Exh. A-20.* According to this document, only the kitchen cabinets and doors were shipped in this order. There are no other documents in evidence indicating that any other portion of Acopan's order was ever fabricated or manufactured in whole or in part.

. . . .

## CONCLUSIONS OF LAW

. . . .

2. Acopan has not demonstrated by a preponderance of the evidence that Pacific Craftworks committed a deceptive trade practice, in violation of HRS § 481A-3[.]

3.   There is no credible or reliable evidence that Pacific Craftworks or Pham misrepresented the standard, quality, or grade of any of its products, including the doors.  Further, there is no credible or reliable evidence that Pacific Craftworks or Pham engaged in conduct that created a likelihood of confusion or misunderstanding.

4.   Rather, the credible and reliable evidence in this case indicates that by October 27, 2012, Acopan had agreed to purchase wood cabinets, shelves, and doors from Pacific Craftworks for a purchase price of $52,200 for delivery by Christmas with Acopan making an initial payment of $39,200. Their agreement did not include countertops as Acopan had decided not to purchase countertops by October 26, 2012.

.   .   .   .

7.   Here, the October 26, 2012 document or invoice evidences the parties' contract for the sale of goods (i.e., the purchase of woodwork from Pacific Craftworks).  It was initialed by Acopan and she made a first payment of $39,200. By initialing the document, Acopan indicated her intention to purchase the woodwork for the amount specified.

.   .   .   .

10.   The eighteen doors that were omitted from the October 26, 2012 document, but included in the itemized list provided to Acopan thereafter, constituted written confirmation of the agreement between Acopan and Pham for Acopan to purchase the doors.  *See* HRS § 490:2-207(1) which provides that "a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon[.]"

11.   The additional term that prohibited refund for orders submitted to the factory for manufacture was a new term that had not been previously disclosed in writing to Acopan.  Notwithstanding this new term, Acopan continued with the transaction by approving CADS and even ordering another item on November 16, 2012 (the nineteenth door) without objecting to the non-refundability of her first payment or deposit.

12.   Acopan's attempt to cancel her order on or after November 23, 2012 was an anticipatory repudiation which was followed by a written repudiation of the contract by Acopan's counsel on December 19, 2012.  These were clear and unmistakable declarations that Acopan would not perform on the contract, and therefore, a breach of the contract with Pacific Craftworks.

13.   When Acopan repudiated the contract, Pacific Craftworks had various remedies available to it, including withholding or stopping delivery, recovering the price of the goods, or cancelling.  *See* generally HRS § 490:2-703.

.   .   .   .

16.   Pacific Craftworks is not entitled to the contract price.  The UCC provides that when a buyer fails to pay the price as it becomes due[,] the seller may recover,

together with any incidental damages, the price of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing. HRS § 490:2-709(1)(b). Further, an "action for the price under subsection (1)(b) can be sustained only after 'a reasonable effort to resell' the goods 'at reasonable price' has actually been made or where the circumstances 'reasonably indicate' that such an effort will be unavailing." Id., comment 3.

17. Here, there was insufficient evidence at trial establishing the efforts Pacific Craftworks took to resell the items that were shipped to Hawaii; whether Pacific Craftworks ever offered the items at a reasonable price; or whether any such efforts would be unavailing under the circumstances.

18. Further, the remaining portions of Acopan's order were not even shipped to Hawaii and there was no evidence at trial establishing whether the remaining portion of her order was ever completed in Vietnam. Where a seller sues for the price he "must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment." HRS § 490:2-709(2). Thus, Pacific Craftworks is not entitled to recover the full contract price.

. . . .

21. Accordingly, Pacific Craftworks is not entitled to retain the entire deposit and is not entitled to recover the contract price. Rather, Pacific Craftworks is entitled to the price for the items shipped to Hawaii which amounts to $28,192.50.

. . . .

23. As Acopan paid $39,200 and Pacific Craftworks did not establish it was entitled to the full contract price, including the retention of the remainder of Acopan's deposit, Acopan is entitled to a refund of $11,007.50.

ORDER

. . . .

1. Judgment shall be entered in favor of Defendant Pacific Craftworks and against Plaintiff Young Acopan as to Plaintiff's claim for a deceptive practice against Defendant Pacific Craftworks;

2. Judgment shall be entered in favor of Defendant Pacific Craftworks and against Plaintiff Young Acopan in the amount of $28,192.50 as to Defendant's counterclaim for breach of contract and Defendant shall refund to Plaintiff $11,007.50;

3. This Order and the Order Granting in Part and Denying in Part Defendant Elegant Concepts et al Motion for Judgment on Partial Findings (HRCP Rule 52(c)) filed simultaneously with this Order resolves all remaining claims between the parties[.]

7

At the same time, the Circuit Court entered an Order Granting in Part and Denying in Part Defendant Elegant Concepts et al.'s Motion for Judgment on Partial Findings [HRCP Rule 52(c)] (**Order re Judgment on Partial Findings**), determining with respect to Acopan's unjust enrichment claim:

> 1) That a contract for the sale of goods existed between the parties; and
>
> 2) That Article 2 of the Uniform Commercial Code, Hawaii Revised Statutes § 490:2-101 et seq, is the controlling law in this case; and
>
> 3) Plaintiff's Count II, Deceptive Trade Practices, would provide the Plaintiff with an adequate remedy in this case, and
>
> 4) The remedy of Unjust Enrichment can only be applied in the absence of an adequate rem[edy] at law. *Porter v. Hu*, 116 Haw. 42, 55-56, 169 P.3d 994, 1007 (2007).

On July 31, 2015, prior to entry of a final judgment, Acopan filed a Motion for Clarification on Court's Findings of Fact, Conclusions of Law and Order Filed on June 23, 2015 and/or for Reconsideration of Court's Order [Granting] in Part and Denying in Part Defendant's Motion for Judgment on Partial Findings Filed on June 23, 2015 (**Motion for Clarification and/or Reconsideration**). Acopan argued, *inter alia*, that the Circuit Court should reconsider its order dismissing Acopan's unjust enrichment claim on the basis that "there should be some judgment in favor of [Acopan] for [her] to recover the refund of $11,007.50 and that the appropriate vehicle would be the unjust enrichment claim." Acopan contended that, although the Circuit Court had initially ruled that unjust enrichment was unavailable

8

because Acopan had another available remedy with her deceptive practices claim, the Circuit Court subsequently dismissed that claim, and therefore Acopan no longer had any adequate remedy at law. Acopan also argued that there was no other vehicle for enforcing the Circuit Court's determination that she was entitled to a refund of $11,007.50, "short of a motion to enforce a court order."

In opposition, Pacific argued that the Circuit Court had no jurisdiction to hear Acopan's motion. Pacific also argued that Acopan's deceptive trade practices claim remained an "adequate remedy at law" notwithstanding her inability to prove her claim and that reinstating the unjust enrichment claim without a new trial would be an abuse of discretion because the parties "had an express contract supplemented by the default provisions of the [UCC]."

On February 17, 2016, the Circuit Court entered an order granting Acopan's Motion for Clarification and/or Reconsideration, which included the following:

> (a) [T]o the extent Plaintiff seeks clarification she is entitled to a refund of $11,007.50 from Defendant, and (b) as Plaintiff had no other remedy to recover the $11,007.50 from Defendant in light of the court's ruling on Count 2 of Plaintiff's Complaint, the court grants Plaintiff's motion for reconsideration on Plaintiff's Unjust Enrichment claim.

On February 22, 2016, the Circuit Court entered the Judgment, which stated, in relevant part:

> 1. Judgment is entered as to Count I (Unjust Enrichment) in favor of [Acopan] as against [Pacific] in the amount of $11,007.50.

2. Judgment is entered as to Count II (Deceptive Trade Practices) in favor of [Pacific] as against [Acopan].

3. Judgment is entered as to the counterclaim filed by [Pacific] in favor of [Pacific] as against [Acopan] in that [Pacific] may retain $28,192.50 of the deposit of $39,200.00 paid by [Acopan]. This portion of the judgment shall not be construed to entitle[] [Pacific] to any additional amount, but should be construed to allow [Pacific] to retain the amount of $28,192.50 of the amount that they have already received.

On February 26, 2016, Pacific submitted [Pacific's] Ex Parte Motion to Amend and Supplement Findings of Fact and Conclusions of Law and/or Motion for New Trial or to Alter or Amend Judgment (**Ex Parte Motion to Amend**), and it was stamped "received" by the Circuit Court. Notwithstanding the title of the Ex Parte Motion to Amend, it was served by hand delivery to Acopan's attorney on the date of filing. On March 7, 2016, Acopan filed a memorandum in opposition; in addition to opposing the substance of the Ex Parte Motion to Amend, Acopan argued that it should be treated as a non-hearing motion, rather than an ex parte motion.

On March 14, 2016, the Ex Parte Motion to Amend was filed by the Circuit Court's clerk. On the front page, it was stamped "DENIED 5th Division," and the attached order, which was signed by the Circuit Court Judge, contained handwritten changes to the order proposed by Pacific. The Circuit Court's handwritten changes included retitling the proposed order that was submitted with Pacific's Ex Parte Motion to state, inter

*alia*,[3] Order "Denying Ex Parte Motion To" Amend and Supplement Findings of Fact and Conclusions of Law. (Added language in quotes.) In the text of the proposed order, the Circuit Court lined out each of Pacific's proposed amendments to certain of the Circuit Court's FOFs and COLs, as well as the first two of Pacific's three proposed orders. The third proposed order, as originally stated in the form submitted by Pacific, read: "Defendant Pacific Craftworks shall be awarded reasonable attorney's fees and costs of suit." The Circuit Court hand wrote changes to the proposed order so that, after the words "Defendant Pacific Craftworks," the court inserted an apostrophe followed by the handwritten statement: "Motion shall be set as a hearing motion and presented to the court for a hearing date in accordance with Circuit Court Rule 7.2(g)."

The following day, on March 15, 2016, Pacific refiled the same motion as a hearing motion, as ordered by the Circuit Court. After a June 1, 2016 hearing, on August 15, 2016, the Circuit Court entered the Post-Hearing Order Denying Amendment. On September 2, 2016 Pacific filed a notice of appeal.

---

[3] The Circuit Court wrote in changes to the title of the order in three places, with each of the handwritten changes being somewhat different than the others.

II. <u>POINTS OF ERROR</u>

Pacific raises three points of error[4] and contends that the Circuit Court erred in its reinstatement of Acopan's unjust enrichment claim and award of damages, because: (1) an express contract existed between the parties, and Acopan's claim for deceptive trade practices constituted an adequate remedy at law; (2) there was no finding of an injustice or wrongdoing; and (3) allowing recovery under unjust enrichment supplanted the applicable statutory scheme for anticipatory repudiation under the Uniform Commercial Code.

III. <u>APPLICABLE STANDARDS OF REVIEW</u>

The Hawai'i Supreme Court has applied the following standard to its review of a trial court's decision regarding equitable relief:

> The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant.

---

[4] As Acopan points out, Pacific's statement of points of error does not fully comply with Hawai'i Rules of Appellate Procedure Rule (**HRAP**) 28(b)(4). Failure to present points of error in accordances with this rule may result in the appellate court disregarding them and counsel is cautioned to comply with all applicable rules. Nevertheless,

> noncompliance with Rule 28 does not always result in dismissal of the claims, and [the appellate courts have] consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible. This is particularly so where the remaining sections of the brief provide the necessary information to identify the party's argument.

<u>Marvin v. Pflueger</u>, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) (citations, internal quotation marks, and ellipses omitted). Accordingly, Pacific's noncompliance with the rule does not preclude this court's review.

Aickin v. Ocean View Invs. Co., Inc., 84 Hawaiʻi 447, 453, 935 P.2d 992, 998 (1997) (citation, internal quotation marks, and brackets omitted).

The appellate court reviews a circuit court's conclusions of law *de novo*. Bremer v. Weeks, 104 Hawaiʻi 43, 51, 85 P.3d 150, 158 (2004). A conclusion of law is not binding on this court and is freely reviewable on appeal for its correctness. Allstate Ins. Co. v. Ponce, 105 Hawaiʻi 445, 453, 99 P.3d 96, 104 (2004). However, a conclusion of law that is supported by the Circuit Court's findings of fact and that reflects an application of the correct rule of law will not be overturned. Id. (quoting AIG Haw. Ins. Co. v. Estate of Caraang, 74 Haw. 620, 628-29, 851 P.2d 321, 326 (1993)).

> The interpretation of a statute is a question of law reviewable de novo. When construing a statute, this court's foremost obligation is to be obtained primarily from the language contained in the statute itself. Where the statutory language is plain and unambiguous, this court's sole duty is to give effect to its plain and obvious meaning.

McLaren v. Paradise Inn Haw., LLC, 132 Hawaiʻi 320, 327, 321 P.3d 671, 678 (2014) (citations omitted).

IV. DISCUSSION

A. Appellate Jurisdiction

As the majority states, when the Judgment was entered on February 22, 2016, HRAP Rule 4 (eff. July 1, 2015) provided, in relevant part:

APPEALS - WHEN TAKEN.

    (a)    Appeals in civil cases.

        (1)    TIME FOR FILING.  When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order.

    .  .  .  .

        (3)    TIME TO APPEAL AFFECTED BY POST-JUDGMENT MOTIONS.  If any party files a timely motion . . . to amend findings or make additional findings, for a new trial, to reconsider, alter or amend the judgment or order, or for attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion[.]

Thus, a notice of appeal from the Judgment was due by March 23, 2016, unless a timely motion "to amend findings or make additional findings, for a new trial, [or] to reconsider, alter or amend the judgment" was filed.

The majority's disposition recognizes that Pacific's February 26, 2016 *Ex Parte* Motion to Amend extended the deadline for filing a notice of appeal "until 30 days after entry of an order disposing of the motion" pursuant to HRAP Rule 4(a)(3). However, the majority mischaracterizes the Circuit Court's March 14, 2016 handwritten order as an order disposing of the motion. The March 14, 2016 order plainly does not address the substance of Pacific's *Ex Parte* Motion to Amend and only rules in part on the motion.  An order finally disposing of the motion was not entered until the Circuit Court's August 15, 2016 Post-Hearing Order Denying Relief.  The Circuit Court clearly intended to further address the substance of Pacific's Ex Parte Motion to Amend after it was set for hearing.

In the *Ex Parte* Motion to Amend, Pacific sought to amend and supplement the Circuit Court's June 23, 2015 FOFs and COLs and, alternatively, sought an order for a new trial. In its March 14, 2016 order, the Circuit Court made no rulings with respect to any of these requests and, instead, struck all substantive determinations in Pacific's proposed order, indicating the Circuit Court did not intend to address the merits of Pacific's *Ex Parte* Motion to Amend at that time. Instead, the Circuit Court addressed only the *ex parte* form of the motion and ordered that Pacific's "Motion shall be set as a hearing motion and presented to the court for a hearing date in accordance with Circuit Court Rule 7.2(g)."[5] This language demonstrates the Circuit Court did not intend a complete ruling on the *Ex Parte* Motion to Amend with its revisions to the proposed order, and instead, the court's language indicates that the Circuit Court would further address Pacific's *Ex Parte* Motion to Amend once the motion was "presented" for a hearing. As ordered, Pacific re-filed the motion with a notice of hearing motion, identical in substance to the *Ex Parte* Motion, which therefore should be treated as an amendment to the timely filed tolling motion. Moreover, the Circuit Court subsequently heard and ruled on the motion, further demonstrating that it did not intend to rule on

---

[5]      While the majority reads this added language in two parts as surrounding the language relating to attorney's fees, context and the Circuit Court's placement of editing marks (or lack thereof) strongly support an uninterrupted reading of the handwritten language.

the substance of Pacific's *Ex Parte* Motion to Amend by way of the March 14, 2016 order.  In essence, the Circuit Court's March 14, 2016 order denied the *ex parte manner* in which Pacific initially presented its motion, but I cannot conclude that the order finally "dispos[ed]" of the *Ex Parte* Motion to Amend, such that the thirty-day deadline to file a notice of appeal pursuant to HRAP Rule 4(a)(3) was triggered on that date.

Instead, the Circuit Court did not enter its order disposing of Pacific's tolling post-trial motion for purposes of extending the notice of appeal filing deadline until its August 15, 2016 Post-Hearing Order Denying Relief, and Pacific's September 2, 2016 notice of appeal was timely filed within thirty days of the entry of that order.  Thus, this court has appellate jurisdiction and should address the merits of Pacific's appeal.

B.    Unjust Enrichment as an Available Remedy

Pacific contends the Circuit Court erred by reinstating Acopan's unjust enrichment claim because an express contract existed between the parties.  Pacific cites the Circuit Court's conclusion that a contract existed between the parties, as well as Porter v. Hu, 116 Hawaiʻi 42, 54, 169 P.3d 994, 1006 (2007), cert. rejected, 117 Hawaiʻi 321, 179 P.3d 263 (2008), for the proposition that "an action for unjust enrichment cannot lie in the face of an express contract."

In Porter, this court examined whether the existence of a contract between the parties bars recovery under the equitable

theory of unjust enrichment. Id. at 55, 169 P.3d at 1007. In that case, the independent-insurance-agent plaintiffs alleged, *inter alia*, that their wrongful termination constituted a breach of their employment contract and that the parent-insurer-defendants' continued retention of the agents' books of business after the wrongful termination gave rise to a claim for unjust enrichment. Id. at 51-52, 169 P.3d at 1003-04. Concluding that unjust enrichment remained an appropriate remedy notwithstanding the existence of an express contract between the parties, we adopted the principle that "restitution is appropriate in situations . . . where an express contract does not fully address an injustice." Id. at 55, 169 P.3d at 1007. In analyzing the contract in Porter, we noted that the defendants had failed to challenge the circuit court's legal conclusion that the contract did not expressly address the compensation of an agent who wrongfully lost his book of business as a result of the parent insurer's misconduct. Id. We further explained that "[d]efendants fail to show that the contract actually addressed a situation like this — where [d]efendants are alleged to have wrongfully subverted the contractual relationship to deprive [p]laintiffs of their books of business." Id. at 55-56, 169 P.3d at 1007-08. Consequently, we concluded that the contract at issue did not preclude recovery under the theory of unjust enrichment. Id. at 56, 169 P.3d at 1008.

17

Applying <u>Porter</u> to the instant case, it must be determined whether the contract "actually addresse[s]" the situation at bar, to wit:  whether the contract expressly addresses the disposition of a buyer's deposit upon her cancellation.  <u>Id.</u> at 55-56, 169 P.3d at 1007-08.  With respect to this issue, the Circuit Court made the following relevant determinations:

FINDINGS OF FACT

13.  On October 27, 2012, Pham went to Acopan's restaurant, Pancakes of Hawaii on Kapiolani Blvd., and presented Acopan with a document dated October 26, 2012 concerning Acopan's purchase of woodwork.  Pham asked for a deposit for Acopan's woodwork order because without a deposit, Pham would not put the order into production.

14.  There are two versions of this document in evidence: Exhibit 1 is the version that Pham kept and Exhibit 24 is a copy of the version that Pham gave to Acopan that she kept.  The face of the document states it is an invoice.  Acopan initialed both documents.  The primary difference between the two documents is that Exhibit 1 (Pham's version) has the words "tax included" written on it and Exhibit 24 (Acopan's copy of her version) does not.

. . . .

18.  The document also had a payment schedule that required a "first payment" of $39,200 and a final payment of $13,000 upon inspection and pickup.  Both parties in this case have referred to the first payment as a deposit.

. . . .

21.  <u>Unlike the Stone Concepts proposal of October 24, 2012 that disclosed the deposit for the granite countertops was non-refundable, the document Pham presented to Acopan on October 27, 2012 for the woodwork did not contain any such term.</u>  The document also did not include eighteen doors that Acopan had previously told Pham that she wanted to order.

. . . .

26.  Also after October 27, 2012 but before November 6, 2012, Acopan requested an itemized price list from Pacific Craftworks.  John Truong [the general manager of Pacific] provided the itemized list which gave the price of the woodwork for each individual unit including the kitchen, 4 closet systems, 3 bathrooms, a powder room, a laundry room, and the bookshelf.

27.  The eighteen full sized doors, omitted from the October 27, 2012 document were included in the itemized

price list. There is no dispute or disagreement that Acopan's woodwork order included eighteen doors.

28. <u>The itemization also included additional terms that were not previously noted on the original document Pham presented to Acopan on October 27, 2012.</u> *Exh. 25.* <u>Specifically, Truong's itemized price list included the term that "Cancellation after work/factory orders have been submitted will result in forfeiture of the entire deposit."</u> *Exh. 25* at page 2, ¶4.

. . . .

CONCLUSIONS OF LAW

. . . .

4. . . . [T]he credible and reliable evidence in this case indicates that by October 27, 2012, Acopan had agreed to purchase wood cabinets, shelves, and doors from Pacific Craftworks for a purchase price of $52,200 for delivery by Christmas with Acopan making an initial payment of $39,200. Their agreement did not include countertops as Acopan had decided not to purchase countertops by October 26, 2012.

. . . .

7. <u>Here, the October 26, 2012 document or invoice evidences the parties' contract for the sale of goods (i.e., the purchase of woodwork from Pacific Craftworks). It was initialed by Acopan and she made a first payment of $39,200. By initialing the document, Acopan indicated her intention to purchase to woodwork for the amount specified.</u>

. . . .

10. The eighteen doors that were omitted from the October 26, 2012 document, but included in the itemized list provided to Acopan thereafter, constituted written confirmation of the agreement between Acopan and Pham for Acopan to purchase the doors. *See* HRS § 490:2-207(1) which provides that "a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon[.]"

11. <u>The additional term that prohibited refund for orders submitted to the factory for manufacture was a new term that had not been previously disclosed in writing to Acopan. Notwithstanding this new term, Acopan continued with the transaction by approving CADs and even ordering another item on November 16, 2012 (the nineteenth door) without objecting to the non-refundability of her first payment or deposit.</u>

(Emphasis added).

Citing the itemized price list, Pacific argues that "the contract . . . included non-refundability." Acopan counters, however, that the October 26, 2012 invoice "is

essentially the contract" and that it "has no terms that address the specific situation here." As quoted above, the Circuit Court concluded that the itemized price list constituted a "written confirmation" of the agreement between Acopan and Pacific to the extent it confirmed the order for the eighteen doors and that HRS § 490:2-207 (2008) therefore governs whether any additional terms included in that written confirmation became part of the contract. However, while the Circuit Court ultimately concluded that Pacific was not entitled to retain the entire deposit, the Circuit Court made no findings of fact expressly determining whether or not the deposit forfeiture term became part of the contract.

Under HRS § 490:2-207(2), "additional terms [in a written confirmation] are to be construed as proposals for addition to the contract." (Emphasis added). As explained in the comments, if additional terms "are such as materially to alter the original bargain" and "so result in surprise or hardship if incorporated without express awareness by the other party," such terms will not be included unless expressly agreed to by the other party. HRS § 490:2-207 cmts. 3, 4.

Here, the Circuit Court noted that Acopan continued with the transaction notwithstanding the inclusion of the additional deposit forfeiture term in the itemized price list. However, the Circuit Court did not make any findings with respect to the materiality of the deposit forfeiture term or whether

Acopan agreed to or was otherwise made sufficiently aware of the term.  Remand is therefore appropriate for the Circuit Court to enter findings necessary for a determination as to whether the deposit forfeiture term became part of the contract pursuant to HRS § 490:2-207(2), since its inclusion would bar recovery under the equitable theory of unjust enrichment.

Pacific also argues that unjust enrichment is prohibited in this case because Acopan had an available remedy at law in the form of her claim for deceptive trade practices. Porter is again instructive.  In that case, in addition to addressing whether the contract at issue provided for redress of the specific harm done, we addressed the adequacy of the tort remedy plaintiffs had sought.  Porter, 116 Hawai'i at 56, 169 P.3d at 1008.  In concluding that the plaintiffs lacked an appropriate tort remedy, we explained that the "mere availability" of some figure of damages does not itself preclude an award founded on unjust enrichment.  Id.  We further explained:

> As Palmer notes in his treatise on restitution, "[t]he objectives of the two remedies are different, however: in the damage action the plaintiff seeks to recover for the harm done to him, whereas in the restitution action he seeks to recover the gain acquired by the defendant through the wrongful act."  1 George Palmer, The Law of Restitution § 2.1, at 51 (1978).  **Although the tort and unjust enrichment claims are, in a sense, founded on the same wrongful conduct . . . the remedies sought are sufficiently distinct**, in this court's view, to exclude this case from the realm of "double recovery" situations.

Id.

Here, the unjust enrichment claim was based on Pacific's wrongful retention of Acopan's entire deposit after her cancellation of the woodwork order, while her deceptive trade practices claim was based on Pacific's alleged misrepresentation of the contents of the order. Moreover, "the remedies sought are sufficiently distinct." Id. While Acopan sought to recover the gain acquired by Pacific as the result of its allegedly wrongful retention of all of the deposit after Acopan's cancellation, the deceptive trade practices claim appears to have sought recovery for damage suffered as a result of entering into the contract in the first instance. Accordingly, the deceptive trade practices claim does not preclude recovery under the theory of unjust enrichment.[6] I conclude the Circuit Court did not abuse its discretion in determining that no adequate remedy at law existed and, absent a finding that the deposit forfeiture term became part of the contract, Acopan might recover under the remedy of unjust enrichment.

C.    No Finding of Wrongdoing

Pacific further contends the Circuit Court erred in awarding the remedy of unjust enrichment in the absence of a finding of wrongdoing. Pacific again cites Porter for the proposition that "[a] claim for unjust enrichment permits a party to seek restitution for benefits improperly conferred on an

---

[6]    Although not specifically addressed in Porter, it can be noted that the plaintiffs in that action also asserted a claim for deceptive trade practices under HRS Chapter 481A – albeit seeking injunctive relief – together with the claim for unjust enrichment.  116 Hawai'i at 46, 169 P.3d at 998.

opposing party as a result of a wrongful act." Hawaiian Ass'n of

Seventh-Day Adventists v. Wong, 130 Hawai'i 36, 49, 305 P.3d 452,

465 (2013) (citing Porter, 116 Hawai'i at 55, 169 P.3d at 1007).

Pacific argues that because no "injustice" or wrongdoing is

attributable to it, there is no basis for disgorging the

$11,007.50 portion of the deposit as a refund to Acopan.

In Porter, we cited Durette v. Aloha Plastic Recycling,

Inc., 105 Hawai'i 490, 100 P.3d 60 (2004), in which the Hawai'i

Supreme Court explained:

> Unjust enrichment, as a claim for relief, is not clearly
> defined in either the Hawaii Revised Statutes or our
> jurisprudence.  As far as we can tell, our best explanation
> of unjust enrichment has been as follows:
>
> > It is a truism that "[a] person confers a benefit upon
> > another if he gives to the other possession of or some
> > other interest in money, land, chattels, or cho[ ]ses
> > in action, . . ., or in any way adds to the other's
> > security or advantage." Restatement of Restitution §
> > 1 comment b (1937).  **One who receives a benefit is of
> > course enriched, and he would be unjustly enriched if
> > its retention would be unjust.** Id. § 1 cmt. a.  And
> > it is axiomatic that "[a] person who has been unjustly
> > enriched at the expense of another is required to make
> > restitution to the other." Id. § 1.  We realize
> > unjust enrichment is a broad and imprecise term
> > defying definition.  But in deciding whether there
> > should be restitution here, we are guided by the
> > underlying conception of restitution, the prevention
> > of injustice.  See A. Denning, The Changing Law 65
> > (1953).

116 Hawai'i at 55, 169 P.3d at 1007 (citing Durette, 105 Hawai'i

at 502, 100 P.3d at 72) (emphasis added).  Thus, we recognized

that "[a] valid claim for unjust enrichment requires _only_ that a

plaintiff prove that he or she conferred a benefit upon the

opposing party and that the retention of that benefit would be

unjust." Id. (quoting Durette, 105 Hawai'i at 504, 100 P.3d at

74) (internal quotation marks omitted) (emphasis added); see also Lumford v. Ota, 144 Hawaiʻi 20, 25, 434 P.3d 1215, 1220 (App. 2018) ("Typically, a claim for unjust enrichment arises out of an allegation that the plaintiff has bestowed a benefit in money, property, or services upon the defendant, and the plaintiff then seeks some form of relief in equity to prevent the unjust enrichment of the defendant.") (citing Durette, 105 Hawaiʻi at 504, 100 P.3d at 74).

Applying these principles here, we conclude there is a sufficient basis for recovery of the portion of Acopan's deposit that Pacific was not entitled to retain under the theory of unjust enrichment. Pacific has failed to present any authority, and we find none, for the proposition that a finding of wrongdoing, independent of the wrongful retention of a benefit, is necessary to support recovery under the theory of unjust enrichment. Instead, it is sufficient that Acopan conferred a financial benefit upon Pacific, and that Pacific's retention of that benefit would be wrongful. Porter, 116 Hawaiʻi at 55, 169 P.3d at 1007. Thus, assuming the contract in this case does not bar the remedy of unjust enrichment, the Circuit Court did not abuse its discretion in allowing recovery of Acopan's deposit under the theory of unjust enrichment, notwithstanding the Circuit Court's lack of a finding of independent wrongdoing on the part of Pacific.

D.    Seller's Remedies under the Uniform Commercial Code

Pacific also contends that the Circuit Court abused its discretion in awarding unjust enrichment damages to Acopan, because, in doing so, it supplanted the applicable statutory scheme for anticipatory repudiation. Pacific argues that the Circuit Court failed to properly apply HRS § 490:2-704 (2008) and erroneously imposed "remaining obligations" on Pacific to fulfill the remainder of Acopan's order. According to Pacific, the Circuit Court erroneously based its award on Pacific's failure to ship all the woodwork to Honolulu.

As an initial matter, Pacific's argument appears to be predicated, in part, on the notion that the contract included the term that Acopan's deposit was non-refundable, which was not addressed in the Circuit Court's FOFs, as explained above. I will nevertheless address Pacific's argument concerning the Circuit Court's application of the relevant statutory provisions in the case of an aggrieved seller of goods.

With respect to Pacific's damages award, the Circuit Court entered the following COLs, with those challenged by Pacific highlighted here:

> 12.   Acopan's attempt to cancel her order on or after November 23, 2012 was an anticipatory repudiation which was followed by a written repudiation of the contract by Acopan's counsel on December 19, 2012. These were clear and unmistakable declarations that Acopan would not perform on the contract, and therefore, a breach of the contract with Pacific Craftworks.

> 13.   When Acopan repudiated the contract, Pacific Craftworks had various remedies available to it, including withholding or stopping delivery, recovering the price of the goods, or cancelling. See generally HRS § 490:2-703.

14. Here, Pacific Craftworks proceeded to ship Acopan's kitchen cabinets and doors after Acopan repudiated the agreement. The cost of these items totaled $26,850 ($14,500 for the kitchen cabinets and $12,350 for the doors), plus 0.5% tax agreed upon by the parties, amounts to $28,192.50.

15. Pacific Craftworks argues that it is entitled to retain the full deposit and recover the full contract price for the "lost sale" of $13,650 and incidental and collateral damages and attorney's fees and reimbursement of costs.

16. Pacific Craftworks is not entitled to the contract price. The UCC provides that when a buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages, the price of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing. HRS § 490:2-709(1)(b). Further, an "action for the price under subsection (1)(b) can be sustained only after 'a reasonable effort to resell' the goods 'at reasonable price' has actually been made or where the circumstances 'reasonably indicates that such an effort will be unavailing." Id., comment 3.

17. Here, there was insufficient evidence at trial establishing the efforts Pacific Craftworks took to resell the items that were shipped to Hawaii; whether Pacific Craftworks ever offered the items at a reasonable price; or whether any such efforts would be unavailing under the circumstances.

18. Further, the remaining portions of Acopan's order were not even shipped to Hawaii and there was no evidence at trial establishing whether the remaining portion of her order was ever completed in Vietnam. Where a seller sues for the price he "must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment." HRS § 490:2-709(2). Thus, Pacific Craftworks is not entitled to recover the full contract price.

19. In addition, Pacific Craftworks was required to establish that it was ready, willing and able to perform its obligations under the contract, even if Acopan repudiated the contract. PR Pension Fund v. Nakada, 8 Haw. App. 480, 489, 809 P.2d 1139, cert. den., 72 Haw. 618, 841 P.2d 1075 (1991).

20. Here, the remaining portion of Acopan's order was never shipped from Vietnam to Hawaii. There was also no evidence at trial establishing whether the remainder of Acopan's order was ever partially or fully fabricated in Vietnam when Acopan repudiated the contract. Given this lack of evidence, Pacific Craftworks did not establish that it was ready, willing and able to perform its remaining obligations under the agreement to fulfill the remainder of

26

**Acopan's order, and therefore is not entitled to recover the full contract price.**

> 21. Accordingly, Pacific Craftworks is not entitled to retain the entire deposit and is not entitled to recover the contract price. Rather, Pacific Craftworks is entitled to the price for the items shipped to Hawaii which amounts to $28,192.50.

As the Circuit Court noted, HRS § 490:2-703 (2008) discusses, in general, an aggrieved seller's remedies where the buyer, *inter alia*, repudiates with respect to a part or the whole of the ordered goods. That section provides, in relevant part:

> § 490:2-703 **Seller's remedies in general.** Where the buyer . . . repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (section 490:2-612), then also with respect to the whole undelivered balance, the aggrieved seller may:
> (a) Withhold delivery of such goods;
> (b) Stop delivery by any bailee as hereafter provided (section 490:2-705);
> (c) Proceed under the next section [490:2-704] respecting goods still unidentified to the contract;
> (d) Resell and recover damages as hereafter provided (section 490:2-706);
> (e) Recover damages for nonacceptance (section 490:2-708) or in a proper case the price (section 490:2-709);
> (f) Cancel.

HRS § 490:2-704 provides:

> § 490:2-704 **Seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods.** (1) An aggrieved seller under the preceding section may:
> (a) Identify to the contract conforming goods not already identified if at the time he learned of the breach they are in his possession or control;
> (b) Treat as the subject of resale goods which have demonstrably been intended for the particular contract even though those goods are unfinished.
> (2) Where the goods are unfinished an aggrieved seller may in the exercise of reasonable commercial judgment for the purposes of avoiding loss and of effective realization either complete the manufacture and wholly identify the goods to the contract or cease manufacture and resell for scrap or salvage value or proceed in any other reasonable manner.

Comment 1 to HRS § 490:2-704 explains:

> 1. This section gives an aggrieved seller the right at the time of breach to identify to the contract any conforming finished goods, regardless of their resalability, and to use reasonable judgment as to completing unfinished goods. <u>It thus makes the goods available for resale under the resale section, the seller's primary remedy, and in the special case in which resale is not practicable, allows the action for the price which would then be necessary to give the seller the value of his contract.</u>

(Emphasis added).

In other words, HRS § 490:2-704 authorizes a seller to exercise reasonable commercial judgment with respect to ceasing or continuing manufacture of goods <u>in order to effectuate the resale of those goods</u> and enable the seller to pursue the "primary remedy" under HRS § 490:2-706 (2008), i.e., "the resale section," or, in certain cases, an action for the price under HRS § 490:2-709 (2008), which is the section entitled, "Action for the price." Thus, Pacific's argument that it was authorized under HRS § 490:2-704 to proceed in a particular manner after Acopan's repudiation is inapposite to a determination of whether the Circuit Court properly applied those provisions relevant to the *measure* of Pacific's damages under the statutory scheme.

HRS § 490:2-706 authorizes a seller to recover when the goods are, in fact, re-sold, measuring those damages as the difference between the resale price and the contract price together with any incidental damages allowed and less expense saved in consequence of the buyer's breach. HRS § 490:2-706(1). Because there is no dispute that Pacific did not re-sell the

ordered goods, HRS § 490:2-706 does not provide an available remedy to Pacific.

However, in its counterclaim, Pacific sought "the remedies listed in § 490:2-708 (2008) including the full contract price and any incidental and collateral damages[.]"  Therefore, the dispute centers around whether Pacific was permitted to recover the price of the contract, which is governed by HRS § 490:2-709, or whether there were any available remedies under HRS § 490:2-708.  Under HRS § 490:2-709:

> (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price:
>
>  . . . .
>
> (b)  Of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

Pursuant to the plain language of HRS § 490:2-709(1)(b), and as reiterated in the comments, the seller will be able to recover the price of the contract *if* the seller makes a reasonable effort to resell them at a reasonable price and is unable to do so or the circumstances indicate that this effort would be unavailing.  See HRS § 490:2-709 cmt. 3 ("An action for the price under subsection (1)(b) can be sustained only after a 'reasonable effort to resell' the goods 'at reasonable price' has actually been made or where the circumstances 'reasonably indicate' that such an effort will be unavailing.") (emphasis added).

Here, the Circuit Court found and concluded, and Pacific does not challenge on appeal, that there was insufficient evidence presented at trial to establish that Pacific satisfied the prerequisites under HRS § 490:2-709(1)(b) for recovering the price of the contract, *i.e.*, that Pacific took efforts to resell the items that were shipped to Hawaiʻi, whether Pacific ever offered the items at a reasonable price, or whether any such efforts would be unavailing under the circumstances. Additionally, I reject Pacific's argument that the Circuit Court's application of HRS § 490:2-709 to Pacific's request to recover the price of the contract constitutes an erroneous imposition of "remaining obligations" to Acopan under the contract, as the statute itself imposes additional criteria for those sellers seeking to recover the price of a contract. Accordingly, I cannot conclude the Circuit Court erred in its interpretation and application of the statutory directive of HRS § 490:2-709(1).

However, with respect to any available remedies under HRS § 490:2-708, the final provision of HRS § 490:2-709 states: "After the buyer . . . has repudiated (section 490:2-610), **a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for non-acceptance under the preceding section**." HRS § 490:2-709(3) (emphasis added). The "preceding section," HRS § 490:2-708 provides:

(1) Subject to subsection (2) and to the provisions of this article with respect to proof of market price (section 490:2-723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this article (section 490:2-710), but less expenses saved in consequence of the buyer's breach.

(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this article (section 490:2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

(Emphasis added). Here, for reasons that are unclear, the Circuit Court's FOFs/COLs and Order fails to address the applicability of this section, notwithstanding the Circuit Court's express determination that Pacific was not entitled to the price of the contract, as well as the provision in HRS § 490:2-709(3) that "a seller who is held not entitled to the price under this section **shall nevertheless be awarded damages for non-acceptance under the preceding section**."[7] (Emphasis added); see also HRS § 490:2-703 cmt. 1 ("This Article rejects any doctrine of election of remedy as a fundamental policy and thus the remedies are essentially cumulative in nature and include all of the available remedies for breach. Whether the pursuit of one remedy bars another depends entirely on the facts of the individual case."). Accordingly, remand is necessary for

---

[7] During the June 1, 2016 hearing on Pacific's Motion to Amend, the Circuit Court, while discussing the applicability of HRS § 490:2-708, alluded to the lack of "evidence or testimony as to the profit which the seller would have made from full performance by the buyer"; however, the Circuit Court did not enter any express findings or conclusions in its FOFs/COLs and Order with respect to this issue, notwithstanding the mandate in HRS § 490:2-709(3).

the Circuit Court to determine the amount of Pacific's damages pursuant to HRS § 490:2-708 and whether this affects Acopan's recovery under the theory of unjust enrichment.

V.     CONCLUSION

        Based on the foregoing, I would affirm in part, vacate in part, and remand this case to the Circuit Court for further proceedings.

                              /s/ Katherine G. Leonard
                              Associate Judge